PEOPLE v KUSOWSKI

Docket No. 59083. Argued December 7, 1977 (Calendar No. 14).—
Decided December 22, 1978.

John Kusowski was convicted by a jury in Saginaw Circuit Court,
Fred J. Borchard, J., of second-degree murder. The defendant
made statements to the police before and after his arrest which
were suppressed as having been made without a proper waiver
of the privilege against self-incrimination. The trial court per-
mitted two witnesses, whose identity was obtained by the police
as a result of the inadmissible statement by the defendant, to
testify over the defendant's objection. The Court of Appeals,
R. B. Burns, P.J., and S. S. Hughes, J. (M. J. Kelly, J., dissent-
ing), reversed and remanded for a new trial on the ground that
the testimony was inadmissible under the exclusionary rule as
the fruit of the poisonous tree (Docket No. 25279). The people
appeal. *Held:*

1. The trial court in part based the order suppressing the
defendant's statements on the failure to show waiver of the
right to appointed counsel, but the defendant does not specifi-
cally argue that his Sixth Amendment right to counsel was
violated. In any event, the Court is convinced that the Supreme
Court of the United States would not find such an·argument
persuasive. Nor is a violation of the defendant's Fifth Amend-
ment privilege against self-incrimination presented. It is uncon-
troverted that before each of two interrogation sessions the
defendant was fully advised of his privilege and reminded that
anything he said could be used against him. The defendant does

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 357, 367, 449.
29 Am Jur 2d, Evidence § 614.
What constitutes "custodial interrogation" within rule of Miranda v
Arizona requiring that suspect be informed of his federal consti-
tutional rights before custodial interrogation. 31 ALR3d 565.
Necessity of informing suspect of rights under privelege against
self-incrimination, prior to police interrogation. 10 ALR3d 1054.
[2] 29 Am Jur 2d, Evidence §§ 412, 415, 416, 531.
Comment note on "Fruit of the poisonous tree" doctrine excluding
evidence derived from information gained in illegal search. 43
ALR3d 385.

not allege that he was threatened or forced into speaking at either interrogation. The interrogating officer testified that no such coercive tactics were employed. The first interrogation lasted 10 to 13 minutes. There thus was no compulsion sufficient to breach the right against compulsory self-incrimination.

2. Whether the trial court's suppression of the defendant's statements, on the ground that he had not voluntarily, knowingly, and intelligently waived his rights before being questioned, was proper is not before the Court. The only issue properly appealed is whether the Court of Appeals erred in deciding that the testimony of the witnesses was inadmissible. Recent cases in the Supreme Court of the United States make it clear that a majority of that court does not now consider a violation of the rule of *Miranda v Arizona* as necessarily involving a violation of the Constitution. The holding that the "fruits" of police conduct which actually infringed a defendant's Fourth Amendment rights must be excluded from evidence is not a controlling precedent where a *Miranda* violation is involved.

3. The application of the exclusionary rule to testimony obtained as a result of a *Miranda* violation would in essence involve an extension of the suppression rule beyond those circumstances in which it already operates, which the Supreme Court of the United States has refused to do in recent cases. Those courts which have addressed the question have concluded that the interest in preventing further police conduct which violates *Miranda* does not justify depriving the government of use of the testimony of third parties discovered as a result of the violation. Therefore the testimony of the two witnesses was admissible.

Justice Williams, joined by Justice Blair Moody, Jr., concurred in reversing the decision of the Court of Appeals. He wrote:

1. There is no exception to the exclusionary rule even for the "fruit" of a statement (*i.e.,* derivative evidence) obtained by violation of the Fifth Amendment right against compelled self-incrimination where there has been a "genuine compulsion of testimony", as contrasted with a violation of a prophylactic rule developed to protect that right, because of judicial concern with coerced self-incrimination.

2. However, where there has been no conduct of the police abridging the right against compulsory self-incrimination there is an "inevitable discovery" exception to the exclusionary rule for the derivative evidence. The question is whether, granting establishment of the primary illegality, the evidence to which

the objection is made would have been discovered inevitably through legal and predictably performed investigatory procedures, and without resort to illegal methods.

3. In this case the trial court made no finding of force or violence by police but a violation of the prophylactic rule of *Miranda v Arizona.* Although the police admitted that their only lead to the witnesses came through the defendant's statements, a review of the record shows that the police would have found the witnesses through legal and predictably performed investigatory procedures. The witnesses were known friends of the defendant. They had lived together at the county home. Defendant's father testified that defendant was known to hang around with the witnesses. This information alone would seem sufficient to lead to the witnesses being questioned by the police. Defendant's father also testified that his son told him he spent the night in question at a hotel. The hotel was later identified as the Fordney Hotel. This was the residence of the witnesses. Again, this information alone would have led the police to the Fordney Hotel and then to the witnesses in question. Therefore, the testimony of the two witnesses was properly admitted into evidence.

Reversed.

## OPINION OF THE COURT

1. CRIMINAL LAW — EVIDENCE — EXCLUSION — FIFTH AMENDMENT.

   There was no compulsion sufficient to breach a defendant's right against compulsory self-incrimination where the defendant was fully advised of his privilege prior to each of two interrogation sessions and reminded that anything he said could be used against him, the defendant does not allege that he was threatened or forced into speaking, the interrogating officer testified that no such coercive tactics were employed, and the first interrogation, before his arrest, lasted 10 to 13 minutes (US Const, Am V).

2. CRIMINAL LAW — EVIDENCE — EXCLUSION — CONSTITUTIONAL LAW.

   The holding that the "fruits" of police conduct which actually infringed a defendant's Fourth Amendment rights must be excluded from evidence is not a controlling precedent in the absence of a violation of a constitutional right; violation of the rule of *Miranda v Arizona* that a defendant must voluntarily, knowingly, and intelligently waive his rights before being questioned is not necessarily the violation of a constitutional right.

3. CRIMINAL LAW — EVIDENCE — EXCLUSION — DERIVATIVE EVIDENCE.

   The interest in preventing further police conduct which violates the rule of *Miranda v Arizona* does not justify depriving the government of the use of the testimony of third parties discovered as a result of the violation (US Const, Am V).

CONCURRING OPINION BY WILLIAMS, J.

4. CRIMINAL LAW — EVIDENCE — FIFTH AMENDMENT — EXCLUSIONARY RULE — DERIVATIVE EVIDENCE.

   *There is no exception to the exclusionary rule even for the "fruit" (i.e., derivative evidence) of a statement obtained by violation of the Fifth Amendment right against compelled self-incrimination where there has been a "genuine compulsion of testimony", as contrasted with a violation of a prophylactic rule developed to protect that right, because of judicial concern with coerced self-incrimination (US Const, Am V).*

5. CRIMINAL LAW — EVIDENCE — FIFTH AMENDMENT — EXCLUSIONARY RULE — DERIVATIVE EVIDENCE — INEVITABLE DISCOVERY.

   *There is an "inevitable discovery" exception to the exclusionary rule for the evidence derived from a statement obtained by violation of the prophylactic rule of* Miranda v Arizona *where there was no conduct by the police abridging the Fifth Amendment right against compulsory self-incrimination, the question is whether the derivative evidence would have been discovered inevitably through legal and predictably performed investigatory procedures, and without resort to illegal methods (US Const, Am V).*

6. CRIMINAL LAW — EVIDENCE — FIFTH AMENDMENT — EXCLUSIONARY RULE — DERIVATIVE EVIDENCE — INEVITABLE DISCOVERY.

   *Testimony by two witnesses whose identity was discovered by police as a result of a statement made by the defendant without a proper waiver of the privilege against self-incrimination was properly admitted into evidence where the defendant's statement had been obtained in violation of a prophylactic rule rather than by "genuine compulsion", the witnesses were known friends of the defendant, and police obtained information through the defendant's father that the defendant had spent the night in question at a certain hotel which was later identified as the residence of the witnesses (US Const, Am V).*

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *Robert L. Kaczma-rek,* Prosecuting Attorney, and *Peter C. Jensen,* Assistant Prosecuting Attorney, for the people.

*H. William Martin* for defendant.

KAVANAGH, C.J. Defendant, John Kusowski, was convicted by a jury of second-degree murder on March 26, 1975. The conviction largely rested upon the testimony of two witnesses whose identities were discovered through statements illegally elicited from the defendant. We granted appeal limited to the issue of whether the Court of Appeals erred in concluding that the testimonial fruits of the illegally obtained statements should have been excluded at trial. Finding error, we reverse.

I

At approximately noon on July 31, 1974, John Kusowski was arrested by Saginaw County authorities for the murder of August Tvardos. On that day, the defendant was questioned twice by the police, once before and once after his arrest. The first interrogation session, which took place in the police patrol car parked in the defendant's driveway, resulted in his arrest. The second interrogation was conducted at the police station approximately three hours after the arrest. During both interrogations, defendant told the police that he had visited his friends, Richard Ban and Robert Sovine, at the Fordney Hotel after he hit the victim over the head with a shotgun on the night of July 28, 1974.

It was admitted at trial by Detective Sergeant Daniel Huff, one of the arresting officers, that at the time he interrogated the defendant in the

patrol car he did not know of the identity of either Ban or Sovine. Therefore, at least initially, knowledge of the identities of these witnesses was obtained solely through the statements elicited from the defendant.

Neither Ban nor Sovine initiated contact with the police concerning their July 28, 1974, visit with the defendant. Richard Ban was approached by Officer Huff on July 31, 1974, the day defendant was arrested, and the police contacted Robert Sovine on August 8, 1974. Ban therefore did not divulge what he knew about the death of August Tvardos until 3 days after the defendant is said to have fatally injured him, and it was approximately 11 days before Sovine gave the police the information he had.

On March 3, 1975, after receiving testimony concerning the circumstances under which the defendant was interrogated, the trial court excluded defendant's statements from use as evidence at trial. The reason assigned was that the prosecution had failed to carry the burden of showing that the defendant had waived his rights to silence and to appointed counsel before being questioned. On the first day of trial, the court denied the defendant's motion to exclude the testimony of Ban and Sovine.

Both Ban and Sovine testified against the defendant and stated that Kusowski had come to their hotel room on July 28, 1974, blurting out that he thought he had killed Tvardos. Each witness testified that Kusowski had blood on his clothing and appeared to be extremely agitated.

On appeal, the Court of Appeals reversed the trial court's denial of the defendant's motion to suppress the testimony of Ban and Sovine.

## II

Even though the trial court based the suppression order in part on the failure to show waiver of the right to appointed counsel, the defendant does not specifically argue that his Sixth Amendment right to counsel was violated. In any event, we are convinced that the United States Supreme Court would not find such an argument persuasive. See *Michigan v Tucker,* 417 US 433, 438; 94 S Ct 2357; 41 L Ed 2d 182 (1974); *Frazier v Cupp,* 394 US 731, 739; 89 S Ct 1420; 22 L Ed 2d 684 (1969).[1]

Neither are we presented with a violation of Kusowski's Fifth Amendment privilege against self-incrimination. It is uncontroverted that prior to each interrogation session the defendant was fully advised of his privilege and reminded that anything he said could be used against him. The defendant does not allege that he was threatened or forced into speaking at either interrogation. The interrogating officer testified that no such coercive tactics were employed. The first interrogation lasted from 10 to 13 minutes. There thus was "no compulsion sufficient to breach the right against compulsory self-incrimination". *Tucker, supra,* 445.

## III

Although we are convinced that no error of

---

[1] "We do not believe that *Escobedo [v Illinois,* 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964)] covers this case. Petitioner's statement about seeing an attorney was neither as clear nor as unambiguous as the request Escobedo made. The police in *Escobedo* were unmistakably informed of their suspect's wishes; in fact Escobedo's attorney was present and repeatedly requested permission to see his client. Here, on the other hand, it is possible that the questioning officer took petitioner's remark not as a request that the interrogation cease but merely as a passing comment. Petitioner did not pursue the matter, but continued answering questions. In this context, we cannot find the denial of the right to counsel which was found so crucial in *Escobedo," Frazier v Cupp,* 394 US 731, 739; 89 S Ct 1420; 22 L Ed 2d 684 (1969).

constitutional dimension was committed by the police in this case, the trial court did hold that the prosecutor failed to demonstrate that the defendant had waived his right against self-incrimination and his right to appointed counsel. Hence, the trial court found a violation of the requirement of *Miranda v Arizona,* 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966), that a defendant must "voluntarily, knowingly and intelligently" waive his rights before being questioned. Finding such violation, the trial court suppressed the defendant's statements as required under *Johnson v New Jersey,* 384 US 719; 86 S Ct 1772; 16 L Ed 2d 882 (1966). Whether these trial court determinations were proper is not before us because there was no application for review. The only issue properly appealed is whether the Court of Appeals erred in deciding that the testimony of Ban and Sovine was inadmissible.

In *Tucker, supra,* the United States Supreme Court held that third-party testimonial evidence derived from a *Miranda* violation is not to be excluded where the interrogation occurred before the decision in *Miranda.* The Court has not decided whether the same result obtains in a case such as this, where the questioning occurred after the *Miranda* decision. Our reading of *Tucker* convinces us that it does.

Prior to *Tucker* the Court appeared to equate a *Miranda* violation with an infringement of a constitutional right.[2] But *Tucker* makes it clear that a

---

[2] *Orozco v Texas,* 394 US 324; 89 S Ct 1095; 22 L Ed 2d 311 (1969), involved statements made by the defendant after his arrest. The police did not give the required *Miranda* warning before questioning the defendant. The statements were admitted into evidence at trial. The Court held:

"[T]he use of these admissions obtained in the absence of the required warnings was a flat violation of the Self-Incrimination Clause of the Fifth Amendment as construed in *Miranda.*" 394 US 326.

majority of the Court does not now consider a violation of *Miranda* as necessarily involving a violation of the Constitution. Thus, *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), which held "that the 'fruits' of police conduct which actually infringed a defendant's Fourth Amendment rights must be suppressed", is not controlling precedent where a *Miranda* violation is involved. *Tucker, supra,* 445-446.

*Tucker* therefore indicates that the applicability of the exclusionary rule under circumstances involving testimony obtained as a result of a *Miranda* violation is not a foregone conclusion, but would in essence involve an extension of the suppression rule. In recent cases the Supreme Court has refused to extend application of the exclusionary rule beyond those circumstances in which it already operates.[3]

For example, in *United States v Janis,* 428 US 433; 96 S Ct 3021; 49 L Ed 2d 1046 (1976), the Court considered whether the exclusionary rule operates in a Federal civil action to prevent the use of evidence seized by state authorities pursuant to an invalid search warrant. After balancing the interests involved, the Court held that suppression of the evidence in a civil proceeding was not justified.

Furthermore, the Court in *United States v Ceccolini,* 435 US 268; 98 S Ct 1054; 55 L Ed 2d 268 (1978), recently stated the *Tucker* holding in broad

[3] *United States v Janis,* 428 US 433; 96 S Ct 3021; 49 L Ed 2d 1046 (1976); *Stone v Powell,* 428 US 465; 96 S Ct 3037; 49 L Ed 2d 1067 (1976) (a Federal court will not entertain a state prisoner's Fourth Amendment exclusionary rule claim on habeas corpus where the prisoner has already received a full and fair hearing on the matter in the state court system); *United States v Calandra,* 414 US 338; 94 S Ct 613; 38 L Ed 2d 561 (1974) (the exclusionary rule does not preclude in a grand jury proceeding questions based on evidence obtained in violation of the Fourth Amendment).

terms, not limiting it to interrogations occurring prior to *Miranda.* Writing for the majority, Justice Rehnquist said:

"[T]he Court has also held admissible at trial testimony of a witness whose identity was disclosed by the defendant's statement given after inadequate *Miranda* warnings. *Michigan v Tucker,* 417 US 433, 450-451 (1974)." *Ceccolini, supra,* 278.

This statement of the *Tucker* holding prompted no response from the dissenting members of the Court.

We have found no case decided since *Tucker,* and none is pointed out, holding that third-party testimony discovered as a result of a *Miranda* violation is to be suppressed. Those courts which have addressed the question have concluded that the interest in preventing future police conduct which violates *Miranda* does not justify depriving the government of use of the evidence.[4]

The Court of Appeals erred in deciding that the testimony of Ban and Sovine should have been suppressed.

Reversed.

LEVIN, COLEMAN, FITZGERALD, and RYAN, JJ., concurred with KAVANAGH, C.J.

WILLIAMS, J. This case concerns the "inevitable discovery" exception to the "fruit-of-the-poisonous-tree" exclusionary rule. At issue is the admissibility of the testimony of witnesses whose identity was discovered through statements made by the defendant.

---

[4] *United States v Cannon,* 529 F2d 890, 894-895 (CA 7, 1976); *Bartram v State,* 33 Md App 115, 166-167; 364 A2d 1119, 1149 (1976); *aff'd,* 280 Md 616; 374 A2d 1144 (1977); *Rhodes v State,* 91 Nev 17, 23; 530 P2d 1199, 1202 (1975).

The defendant's actual statements were suppressed by the trial court for failure to show a valid waiver. The testimony of the so-discovered witnesses was allowed over objection by defense counsel that the fruit-of-the-poisonous-tree exclusionary rule should be applied to any evidence derived from the defendant's suppressed statements. The Court of Appeals found the fruit-of-the-poisonous-tree doctrine applicable to the testimony of the witnesses, reversed the defendant's conviction and remanded for a new trial.

We find that the instant case falls into the "inevitable discovery" exception to the exclusionary rule.[1] We reverse the Court of Appeals. Defendant's conviction is reinstated.

## I. FACTS

On July 31, 1974, the body of August Tvardos was discovered in his house. While investigating the homicide the police were informed by a relative of the deceased that John Kusowski, the defendant, had some contact with the deceased concerning money. The same day the police went to defendant's home and escorted him to the squad car for questioning. At this time defendant admitted that he (1) knew Tvardos, (2) had been in his home and (3) had struck Tvardos over the head with a shotgun. Defendant also mentioned Robert Sovine and Richard Ban, friends he had visited after leaving Tvardos' home. Defendant was then arrested and taken to the police station for a formal statement. Part of the formal statement included the fact that defendant had talked with two friends, Richard Ban and Robert Sovine, at the Fordney

---

[1] La Count & Girese, *The "Inevitable Discovery" Rule, an Evolving Exception to the Constitutional Exclusionary Rule,* 40 Albany L Rev 483 (1976).

Hotel after leaving the Tvardos home. The police questioned both men and their statements implicated defendant in the homicide.

March 3, 1975, prior to trial, defense counsel moved to suppress any and all incriminatory statements made by defendant. An evidentiary hearing was held and the trial judge granted defendant's motion to suppress the statements because the prosecution had not sustained its burden of proof that there had been a knowing and intelligent waiver of the privilege against self-incrimination, a *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), violation.

On the day of trial, March 20, 1975, defendant moved to suppress all evidence procured through the use of the incriminating statements previously suppressed, including the testimony of Ban and Sovine. The trial court denied defendant's motion.

At trial Ban and Sovine testified for the prosecution. Their testimony implicated defendant in the homicide. The defendant was convicted of second-degree murder.

In a separate record, made out of the presence of the jury, the investigating officer admitted that the only lead he had had to Sovine or Ban came from the statements made by the defendant. However, during the trial there was testimony that linked the defendant to Sovine, Ban and the Fordney Hotel. The defendant's father, when asked by defense counsel with whom his son associated, responded "[w]ith Sovine at the county home". Defendant, Sovine and Ban had been residents of the county home. When questioned about the night of the homicide, defendant's father stated that his son told him he had spent the night "at the hotel". Later, defendant's father identified the hotel as the "Fordney Hotel".

The Court of Appeals reversed and remanded for a new trial ruling that the testimony of Ban and Sovine was inadmissible under the fruit-of-the-poisonous-tree doctrine.

We granted leave to determine the admissibility of the testimony of Ban and Sovine.

## II

In this case we are concerned with a possible violation of the Fifth Amendment right against compulsory self-incrimination. A violation of this constitutional right would require the application of the exclusionary rule.

In the instant case it is not the inadmissible statements made by the defendant that are at issue, but the information derived from those statements, the identity of the witnesses.

The United States Supreme Court has yet to directly address the question of an "inevitable discovery" exception to the exclusionary rule although it has in dicta recognized the existence of that doctrine.[2] Consequently, we must interpret

[2] In *Brewer v Williams,* 430 US 387; 97 S Ct 1232; 51 L Ed 2d 424 (1977), the Supreme Court found statements obtained from defendant should have been excluded at his trial due to a violation of his Sixth Amendment right to assistance of counsel. Although not specifically determining the admissibility of any evidence derived from the illegal statements, the Supreme Court did state, as dicta:

"The District Court stated that its decision 'does not touch upon the issue of what evidence, if any, beyond the incriminating statements themselves must be excluded as "fruit of the poisonous tree." ' 375 F Supp 170, 185 [SD Iowa, 1974]. We, too, have no occasion to address this issue, and in the present posture of the case there is no basis for the view of our dissenting Brethren, *post,* at 430 (White, J., dissenting); *post,* at 441 (Blackmun, J., dissenting), that any attempt to retry the respondent would probably be futile. While neither Williams' incriminating statements themselves nor any testimony describing his having led the police to the victim's body can constitutionally be admitted into evidence, *evidence of where the body was found and of its condition might well be admissible on the theory that the body would have been discovered in any event, even had incriminating*

the doctrine in light of pronouncements on the protection of constitutional rights, in particular, the Fifth Amendment right against compelled self-incrimination.

In *Michigan v Tucker,* 417 US 433; 94 S Ct 2357; 41 L Ed 2d 182 (1974), the United States Supreme Court analyzed the Fifth Amendment right against compulsory self-incrimination in light of the requirements of *Miranda* and decided the question was:

"whether the police conduct complained of directly infringed upon respondent's right against compulsory self-incrimination or whether it instead violated only the prophylactic rules developed to protect that right [*Miranda* warnings]." 417 US 433, 439.

The Court was faced with a unique factual situation. The defendant's arrest and interrogation was pre-*Miranda,* but his trial post-*Miranda.* At the time of the interrogation the police were in full compliance with the rules governing interrogations as established by *Escobedo v Illinois,* 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964). But, because not required by *Escobedo,* they did not advise defendant of his right to free counsel, a requirement later established by *Miranda.* Defendant's statements were therefore suppressed because he had not been accorded his *Miranda* warnings.

The United States Supreme Court, however, found the testimony of a witness, whose identity was learned through the suppressed statements,

*statements not been elicited from Williams. Cf. Killough v United States,* 119 US App DC 10; 336 F 2d 929 [1964]. In the event that a retrial is instituted, it will be for the state courts in the first instance to determine whether particular items of evidence may be admitted." (Emphasis added.) 430 US 387, 406-407, fn 12.

admissible. The Court found that the sanction, complete exclusion of all derivative evidence, would serve no useful purpose in this unique situation.

The Court limited its decision to the particular factual situation it was presented.

"We consider it significant to our decision in this case that the officers' failure to advise respondent of his right to appointed counsel occurred prior to the decision in *Miranda.* Although we have been urged to resolve the broad question of whether evidence derived from statements taken in violation of the *Miranda* rules must be excluded regardless of when the interrogation took place, we instead place our holding on a narrower ground. For at the time respondent was questioned these police officers were guided, quite rightly, by the principles established in *Escobedo v Illinois,* 378 US 478 (1964), particularly focusing on the suspect's opportunity to have retained counsel with him during the interrogation if he chose to do so." 417 US 433, 447.

The United States Supreme Court concluded that the "case involved no compulsion sufficient to breach the right against compulsory self-incrimination * * *".[3] The Court found "that the police conduct * * * departed only from the prophylactic standards later laid down by this Court in *Miranda* to safeguard that privilege".[4] Using that distinction as one of their bases, the United States Supreme Court, under these circumstances, found admissible the fruit-of-the-poisonous-tree testimony of a witness whose identity was learned through statements taken from the defendant without full compliance with the requirements of *Miranda.*

In *Brown v Illinois,* 422 US 590; 95 S Ct 2254; 45

[3] 417 US 433, 445.
[4] 417 US 433, 445-446.

L Ed 2d 416 (1975),[5] The United States Supreme
Court analyzed the exclusionary rule stating:

" 'The rule is calculated to prevent, not to repair. Its
purpose is to deter—to compel respect for the constitu-
tional guaranty in the only effectively available way—
by removing the incentive to disregard it.' *Elkins v
United States,* 364 US 206, 217 [80 S Ct 1437; 4 L Ed 2d
1669] (1960). But '[d]espite its broad deterrent purpose,
the exclusionary rule has never been interpreted to
proscribe the use of illegally seized evidence in all
proceedings or against all persons.' *United States v
Calandra,* 414 US [338], at 348 [94 S Ct 613; 38 L Ed 2d
561 (1974)]. See also *Michigan v Tucker,* 417 US 433,
446-447 (1974)." 422 US 590, 599-600.

Thus, the Court recognized valid exceptions to the
exclusionary rule as it has been applied to both
Fourth and Fifth Amendment violations.

In unraveling the lower court's decision in
*Brown,* the United States Supreme Court reviewed
the Fifth Amendment right against compelled self-
incrimination in relation to the *Miranda* warning
and found:

"This Court has described the *Miranda* warnings as a
'prophylactic rule,' *Michigan v Payne,* 412 US 47, 53 [93
S Ct 1966; 36 L Ed 2d 736] (1973), and as a 'procedural
safeguard,' *Miranda v Arizona,* 384 US at 457, 478,
employed to protect Fifth Amendment rights against
'the compulsion inherent in custodial surroundings.' *Id.,*
at 458. The function of the warnings relates to the Fifth
Amendment's guarantee against coerced self-incrimina-
tion, and the exclusion of a statement made in the

---

[5] "[T]he issue is whether the statements were to be excluded as the
fruit of the illegal arrest, or were admissible because the giving of the
*Miranda* warnings sufficiently attenuated the taint of the arrest." 422
US 590, 591-592. The Supreme Court decided that protection of the
Fourth Amendment right required the exclusion of the statement
regardless of the compliance with the *Miranda* warnings designed to
protect the Fifth Amendment right against compelled self-incrimina-
tion.

absence of the warnings, it is said, serves to deter the taking of an incriminating statement without first informing the individual of his Fifth Amendment rights." 422 US 590, 600-601.

The *Brown* Court thus acknowledged the *Tucker* Court's concern with the "genuine compulsion of testimony"[6] and the role of the *Miranda* warnings.

Both *Tucker* and *Brown* would require exclusion of a statement taken without the benefit of *Miranda* warnings. Therefore, any exception to the exclusionary rule, with reference to the Fifth Amendment right against compelled self-incrimination, would only occur at some point past the primary illegality, the illegally obtained statements. Any exception we find could only apply to the fruit of the poisonous tree, the derivative evidence. Yet, because of the United States Supreme Court's concern with coerced self-incrimination, we find there would be no exception to the exclusionary rule, even for the "fruit"[7] where

---

[6] "*Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), is controlling precedent for requiring the exclusion of the tainted fruits of police conduct which abridges constitutional rights. *Tucker,* 417 US at 446, 83 S Ct 407. *Brown v Illinois,* 422 US 590; 95 S Ct 2254; 45 L Ed 2d 416 (1975). The use of police coercion to extract an involuntary statement is a violation of due process under the Fourteenth Amendment, *Haynes [v Washington,* 373 US 503; 83 S Ct 1336; 10 L Ed 2d 513 (1963)]; *Spano v New York,* 360 US 315; 79 S Ct 1202; 3 L Ed 2d 1265 (1959), and to the extent that the use of police coercion to extract a statement is regarded as a violation of the right against self-incrimination, made applicable to the states in *Malloy v Hogan,* 378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964), an independent line of Fifth Amendment precedents would also require exclusion. The Fifth Amendment protects 'against that use of compelled testimony which consists in gaining therefrom a knowledge of the details of the crime, and of sources of information which may supply other means of convicting the witness or party.' *Counselman v Hitchcock,* 142 US 547, 586; 12 S Ct 195, 206; 35 L Ed 1110 (1892)." *United States v Cannon,* 529 F2d 890, 892 (CA 7, 1976).

[7] "Nothing in *Tucker* suggests that there need not be exclusion of third party testimony where a state court defendant can show that such testimony is the product of a coerced or involuntary statement. *Tucker* holds that a failure to give a required *Miranda* warning is not

there has been a "genuine compulsion of testimony"[8] as contrasted with a mere violation of a prophylactic rule.

If the "inevitable discovery" exception to the exclusionary rule has any place, in relation to the right against compelled self-incrimination, it can only be in instances where there was no conduct by the police abridging the right against compulsory self-incrimination as discussed in *Tucker.* Once such conduct is not found, a full review of the situation in light of the rationale of the "inevitable discovery" exception would be possible.

### III

In recent years a growing number of jurisdic-

---

a constitutional violation, and that an unwarned statement may nevertheless be found to be voluntary under traditional standards. Only after establishing that the defendant's unwarned statement *was voluntary* did the Court go on to consider whether, as a matter of first impression, the third party testimonial fruits of the unwarned statement could be admitted." *United States v Cannon,* 529 F2d 890, 892-893 (CA 7, 1976).

[8] "We can envisage that the balancing (as performed in *Tucker)* of the social interest in trustworthy evidence against the needs for deterrence of improper police conduct might cause the Supreme Court to allow the admission of third party testimonial fruits of interrogation of an accused in custody without *Miranda* warnings in a case where, unlike *Tucker,* the event occurred after the *Miranda* decision. Even with that assumption, it seems to us most improbable that such balancing would permit the prosecution to use similar third party testimonial results of coerced statements * * *. Surely in *Tucker,* the Court took pains to point out that the *Tucker* facts lacked coercion sufficient to amount to compulsion of self-incrimination * * *." *United States v Cannon,* 529 F2d 890, 892 (CA 7, 1976).

"So, in *Tucker,* the failure to advise an accused during a custodial interrogation, held prior to the *Miranda* decision, of his right to appointed counsel, did not in the circumstances existent, infringe against the right against compulsory self-incrimination but only violated the prophylactic rules developed to protect that right. Therefore, the use of the testimony of a witness discovered by the police as a result of the accused's statements did not violate any requirements under the Fifth, Sixth and Fourteenth Amendments, relating to the adversary system." *Ryon v State (On Remand),* 29 Md App 62, 67; 349 A2d 393, 397 (1975).

tions, both federal and state, have recognized the validity of the "inevitable discovery" exception to the fruit-of-the-poisonous-tree exclusionary rule.

"The so-called 'inevitable discovery' rule, a relatively recent refinement in American criminal law, is an evolving exception to the Constitutional exclusionary rules, in force in both federal and state jurisdictions, which prohibit the use in court of evidence procured by law enforcement officers in violation of the constitutionally protected rights of the accused." 40 Albany L Rev 483.

The doctrine is limited to situations involving the "fruit" as opposed to the poisonous tree; it is only the derivative evidence that has in some instances been admitted under this exception.[9] The "poisonous tree", the primary evidence seized in violation of a constitutional right or safeguard, has still been excluded by use of the exclusionary rule. The inevitable discovery exception has been applied in cases involving the Fourth Amendment right against "unreasonable searches and seizures" and the Fifth Amendment right against compelled self-incrimination.

The "inevitable discovery" doctrine has evolved from an analysis of similar exceptions to the exclusionary rule reviewed in *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963):

---

[9] "This rule holds that tainted derivative evidence may be used if the government can demonstrate that it would inevitably have been discovered by lawful means without the aid of the unlawfully obtained primary evidence. It is properly considered an exception to the exclusionary rule for it allows the use of derivative evidence, the discovery of which was proximately caused by unlawful official conduct, on a rationale that the unlawful conduct was not a sine qua non to the discovery of the derivative evidence." Ringel, Searches & Seizures, Arrest and Confessions (Clark Boardman Co, Ltd, 1977 Cum Supp), p 21.

"Hence this is not the case envisioned by this Court where the exclusionary rule has no application because the Government learned of the evidence 'from an independent source,' *Silverthorne Lumber Co v United States,* 251 US 385, 392 [40 S Ct 182; 64 L Ed 319 (1920)]; nor is this a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' *Nardone v United States,* 308 US 338, 341 [60 S Ct 266; 84 L Ed 307 (1939)]. We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." 371 US 471, 487-488.

In *Wayne v United States,* 115 US App DC 234; 318 F2d 205 (1963), a case involving an illegal search, Chief Justice Burger, then a circuit judge, stated:

"The contention is that the entry of the police into his apartment, which had been found by a District Judge on a pre-trial motion to have been illegal, and the seizure of the body immediately following such illegal entry, precluded the introduction of the coroner's testimony about the condition of the body and the cause of death. The doctrine invoked is that commonly known as the 'fruit of the poisonous tree.' * * *

"Without now reaching the legality of the entry, we agree with the government that, in the circumstances of this case, the testimony objected to could not be considered as the 'fruit of the poisonous tree.' " 115 US App DC 234, 238.

The Court analyzed the situation in light of the mandates of *Wong Sun, supra,* and found that:

"It was inevitable that, even had the police not entered appellant's apartment at the time and in the manner they did, the coroner would sooner or later have been advised by the police of the information reported by the sister, would have obtained the body, and would have conducted the post mortem examination prescribed by law." 115 US App DC 238.

In *People v Fitzpatrick,* 32 NY2d 499; 300 NE2d 139 (1973), the concern was evidence discovered as a result of statements obtained from the defendant in violation of *Miranda.* After reviewing the United States Supreme Court's decisions[10] on the exclusionary rule the court found:

"In line with this reasoning, the courts have held that evidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence. [Citations omitted.] In other words, as one commentator put it, the inevitable discovery factor 'permits the government to remove the taint from otherwise poisoned fruit by establishing that the unlawful act from which it resulted was not a *sine qua non* of its discovery.'" 32 NY2d 499, 506-507.

In *Government of Virgin Islands v Gereau,* 502 F2d 914 (CA 3, 1974), one of the questions presented was whether evidence found as a result of an illegal statement, *Miranda* violation, obtained from the defendant was admissible. After reviewing the facts, the court found that the district judge was not in error in admitting the evidence because the government had shown that "the police and F.B.I. agents would have found the luger

---

[10] *Silverthorne Lumber Co v United States,* 251 US 385; 40 S Ct 182; 64 L Ed 319 (1920); *Nardone v United States,* 308 US 338; 60 S Ct 266; 84 L Ed 307 (1939); *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

without utilization of Smith's [defendant's] statement". 502 F2d 914, 928.

It appears that a number of jurisdictions[11] considering the issue have adopted the "inevitable discovery" rule as a valid exception to the exclusionary rule, fruit-of-the-poisonous-tree doctrine.

## IV

The application of the "inevitable discovery" exception to the exclusionary rule therefore requires, as it applies to the Fifth Amendment right against compulsory self-incrimination, a two-prong test. First, has there been police conduct sufficient to abridge the constitutional privilege, a "genuine compulsion of testimony", or just a breach of the prophylactic standards that safeguard the privilege. Second, "would the police have discovered the tainted evidence through the utilization of legal and predictably performed investigatory procedures, and without resort to illegal methods".

First, the trial court made no finding of force or violence. The court found the prosecution had not sustained its burden of proving a knowing and intelligent waiver of the privilege against self-incrimination and the right to court-appointed counsel. This refers to the prophylactic rule rather than the constitutional guarantee.

Second, although the police admitted that their

---

[11] *United States ex rel Owens v Twomey,* 508 F2d 858 (CA 7, 1974); *Government of Virgin Islands v Gereau,* 502 F2d 914 (CA 3, 1974); *United States v Falley,* 489 F2d 33 (CA 2, 1973); *United States v Jackson,* 448 F2d 963 (CA 9, 1971); *United States v Seohnlein,* 423 F2d 1051 (CA 4, 1970); *Killough v United States,* 119 US App DC 10; 336 F2d 929 (1964); *Wayne v United States,* 115 US App DC 234; 318 F2d 205 (1963); *People v Fitzpatrick,* 32 NY2d 499; 300 NE2d 139 (1973); *Lockridge v Superior Court of Los Angeles County,* 3 Cal 3d 166; 474 P2d 683 (1970).

only lead to the witnesses came through defendant's statements, a review of the record presents a situation from which it would be inevitable that the police through "legal and predictably performed investigatory procedures" would have found the witnesses.

The witnesses were known friends of the defendant. They had lived together at the county home. Defendant's father testified that defendant was known to hang around with the witnesses. This information alone would seem sufficient to lead to the witnesses being questioned by the police.

Defendant's father also testified that his son told him he spent the night in question at a hotel. The hotel was later identified as the Fordney Hotel. This was the residence of the witnesses. Again, this information alone would have led the police to the Fordney Hotel and then to the witnesses in question.

## V. CONCLUSION

We find there was no violation of the defendant's Fifth Amendment right against compelled self-incrimination, only a violation of "the prophylactic rules developed to protect that right".

We find also that there was sufficient information available to the police that the discovery of the witnesses was inevitable. We therefore conclude that the testimony of the witnesses Ban and Sovine was admissible.

The decision of the Court of Appeals is reversed and defendant's conviction reinstated.

BLAIR MOODY, JR., J., concurred with WILLIAMS, J.