PEOPLE v CARL JOHNSON

Docket No. 43427. Submitted February 7, 1980, at Grand Rapids.—
Decided August 25, 1980.

Carl Johnson was convicted of first-degree premeditated murder
and felony murder-rape in the VanBuren Circuit Court, Robert
E. A. Boyle, J. The defendant appeals alleging that (1) his
signed written waiver of jury trial was ineffective because it
was not executed in open court, (2) the magistrate erred in
binding the defendant over on an open charge of murder, (3)
the trial court erred in admitting evidence of certain state-
ments the defendant made to the police which were allegedly
involuntary, (4) the seizure of certain evidence at his apartment
violated his Fourth Amendment right to remain free from
unreasonable searchs and seizures, (5) the trial court erred in
refusing to grant his motion for a directed verdict of acquittal
on the charge of first-degree murder, and (6) his conviction of
first-degree felony murder was violative of the due process
clause since the underlying felony, rape, had been abolished
and replaced with the criminal sexual conduct act. *Held:*

1. The Michigan jury waiver statute is to be strictly con-
strued to the extent that a written waiver is ineffective where
the defendant does not waive his right in open court. A valid
waiver does not require an oral acknowledgement where it is
apparent that the waiver was made in open court. Here, there
was no reversible erro∴.

2. Absent a showing of clear abuse of discretion, the Court of
Appeals will not reverse a magistrate's determination of proba-
ble cause.

3. The Court of Appeals is required to examine the entire
record and make an independent determination of voluntari-

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur 2d, Jury § 83.
[2] 21 Am Jur 2d, Criminal Law § 443.
[3] 29 Am Jur 2d, Evidence § 612.
[4] 75 Am Jur 2d, Trial §§ 548-558.
[5] 40 Am Jur 2d, Homicide § 45.
[6] 40 Am Jur 2d, Homicide § 72.
[7] 40 Am Jur 2d, Homicide §§ 183-185.

ness when a defendant alleges that the trial court erred in admitting evidence of certain statements the defendant made to the police which were allegedly involuntary, and the relevant factors to be considered in such a determination are: (a) the duration and conditions of detention; (b) the manifest attitude of the police toward the accused; (c) the physical and mental state of the accused; and (d) diverse pressures which sap or sustain the accused's powers of resistance or self control, with the ultimate consideration being whether the confession is the product of an essentially free and unconstrained choice by its maker. Here, the Court of Appeals declines to disturb the trial judge's findings on voluntariness.

4. A trial judge must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt when ruling on a motion for a directed verdict of acquittal. Here, there was no error by the trial judge.

5. The following factors are relevant in a determination of whether a defendant accused of murder acted with premeditation: (1) the previous relationship of the parties; (2) the defendant's actions prior to the actual killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide.

6. The Michigan criminal sexual conduct statute, although it enlarges the scope of criminal sexual conduct over that proscribed by the former carnal knowledge statute, continues the historic prohibition of rape and there is no violation of a defendant's due process where a defendant is charged with felony murder and the jury is instructed on the definition of rape under the former Michigan carnal knowledge statute.

7. The defendant's conviction of both first-degree premeditated murder and first-degree felony murder violates double jeopardy protection where only one murder occurred. Therefore, the defendant's felony murder conviction is vacated.

8. The defendant's right to remain free from unreasonable searches and seizures was not violated.

Affirmed in part, reversed in part.

1. CRIMINAL LAW — JURY WAIVER — REQUIREMENTS.

The jury waiver statute is to be strictly construed to the extent that a written waiver is ineffective where a defendant does not waive his right in open court; and a valid waiver does not

require an acknowledgement where it is apparent that the waiver was made in open court (MCL 763.3; MSA 28.856).

2. APPEAL — CRIMINAL LAW — MAGISTRATES — PROBABLE CAUSE.

The Court of Appeals will not reverse a magistrate's determination of probable cause, absent a showing of clear abuse of discretion.

3. APPEAL — CRIMINAL LAW — COURTS — STATEMENTS — VOLUNTARINESS.

The Court of Appeals is required to examine the entire record and make an independent determination of voluntariness when a defendant alleges that the trial court erred in admitting evidence of certain statements the defendant made to the police which were allegedly involuntary, and the relevant factors to be considered in such a determination are: (a) the duration and conditions of detention; (b) the manifest attitude of the police toward the accused; (c) the physical and mental state of the accused; and (d) diverse pressures which sap or sustain the accused's powers of resistance or self control, with the ultimate consideration being whether the confession is the product of an essentially free and unconstrained choice by its maker.

4. CRIMINAL LAW — JUDGES — DIRECTED VERDICT — ACQUITTAL.

A trial judge must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt when ruling on a motion for a directed verdict of acquittal.

5. HOMICIDE — PREMEDITATED MURDER — FACTORS.

The following factors are relevant in a determination of whether a defendant accused of murder acted with premeditation: (1) the previous relationship of the parties; (2) the defendant's actions prior to the actual killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide.

6. RAPE — FELONY MURDER — STATUTES.

The Michigan criminal sexual conduct statute, although it enlarges the scope of criminal sexual conduct over that proscribed by the former carnal knowledge statute, continues the historic prohibition of rape and there is no violation of a defendant's due process where a defendant is charged with felony murder and the jury is instructed on the definition of rape under the

former Michigan carnal knowledge statute (MCL 750.316,
750.520, 750.520a *et seq.;* MSA 28.548, 28.788, 28.788[1] *et seq.).*

7. HOMICIDE — FIRST-DEGREE MURDER — FELONY MURDER — DOUBLE
   JEOPARDY.
   A defendant's conviction of both first-degree premeditated murder
   and first-degree felony murder violates double jeopardy protec-
   tion where only one murder occurred.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Ward S. Ham-
lin, Jr.,* Prosecuting Attorney (by *Leonard J. Mali-
nowski,* Assistant Attorney General, Prosecuting
Attorneys Appellate Service), for the people.

*DeVries & Lamb, P.C.,* for defendant on appeal.

Before: DANHOF, C.J., and R. B. BURNS and MAC-
KENZIE, JJ.

MACKENZIE, J. Defendant Carl Johnson was
charged with first-degree premeditated murder
and felony murder-rape, contrary to MCL 750.316;
MSA 28.548, arising out of the death of Terry
Lynn Wilson in Bangor, Michigan, on July 4, 1977.

The evidence at trial indicated that defendant
and the victim had known each other during high
school and that defendant was seen dancing with
her in a South Haven bar a few hours before her
death. Three witnesses testified that they saw
defendant standing beside a cream-colored Pontiac,
similar to the one the victim had been driving,
between 2 a.m. and 3 a.m. the morning of July
4th. They heard several muffled screams coming
from the car, but left when defendant requested
them to leave after stating "Go away, I fucked up
bad, go away". Several hours later, the victim's
body was found in the trunk of her car at a
different location. She was nude from the waist
down and had been stabbed numerous times, but

the cause of death was determined to be a blow to the back of her head most likely from a tire iron. The tire iron was found at the location where the three witnesses had seen defendant. The pathologist was unable to determine whether the victim had been raped.[1]

Defendant was convicted of both first-degree premeditated murder and felony murder-rape in a bench trial before Judge Robert E. A. Boyle sitting by special assignment of the Michigan Supreme Court. On May 26, 1978, defendant was sentenced to life imprisonment in solitary confinement. He appeals as of right.

Defendant raises several issues on appeal. He initially contends that his signed, written waiver of jury trial filed March 30, 1978, was ineffective because it was not executed in open court in compliance with MCL 763.3; MSA 28.856. The statute requires that a waiver of jury trial be in writing, signed by the defendant, filed and made part of the record, and that "[s]uch waiver of trial by jury must be made in open court after the said defendant has been arraigned and has had opportunity to consult with counsel".

It is true that the jury waiver statute is to be strictly construed to the extent that a written waiver is ineffective where defendant does not waive his right in open court. *People v Rimmer,* 59 Mich App 645; 230 NW2d 170 (1975). In the case at bar, the following colloquy occurred between the trial judge, defense counsel, and the prosecutor in open court on the first day of trial:

"THE COURT: Very well. Now, at this time I want to

---

[1] His testimony indicated that she had sustained a wound at the opening of her vagina which could have been caused by an erect penis. However, no sperm or other evidence of sexual intercourse was found.

check—and do I understand that there is no question but what the Defendant has signed a written waiver of jury trial and filed it?

"MR. SEAMAN: That's correct, Your Honor.

"THE COURT: You agree on that?

"MR. HAMLIN: Yes, Your Honor.

"THE COURT: Very well. Thank you. You may now proceed with your opening statement, Mr. Hamlin."

Although the statute does not expressly require an oral waiver, such a requirement has been imposed previously. *People v Word,* 67 Mich App 663; 242 NW2d 471 (1976).

However, we agree with the Court in *People v McKaig,* 89 Mich App 746, 750; 282 NW2d 209 (1979), that there should not be a hard and fast rule in every case. There it was held that a valid waiver does not require an oral acknowledgment where it is apparent that the waiver was made in open court. Similarly, in *People v Little,* 87 Mich App 50, 55; 273 NW2d 583 (1978), it was held that defendant need not orally waive jury trial himself, but it was sufficient if defendant was present when defense counsel did so. See also *People v Braxton,* 91 Mich App 689; 283 NW2d 829 (1979).

From the testimony of defendant and trial counsel at the motion for a new trial held December 15, 1978, it is apparent that defendant was informed several times before signing the written waiver of the advantages and disadvantages of a jury trial as opposed to a bench trial. Because of pretrial publicity and the complicated nature of defendant's insanity defense, a bench trial was chosen as a matter of trial strategy. Defense counsel anticipated a bench trial well in advance of trial when he moved to disqualify Judge Warshawsky, initially assigned to the case, because he had been exposed to evidence ruled inadmissible. De-

fendant had been informed by defense counsel that he would be asked about his waiver by the trial judge; in fact, defendant was present when his counsel told the trial court that defendant had waived trial by jury.

Visiting Judge Boyle, who presided at defendant's trial, indicated in his opinion and decision denying a new trial dated November 3, 1978, that he had been informed that the reason he was assigned to the case was that defendant had waived jury trial. In that opinion, Judge Boyle stated that when defense counsel stated that defendant had waived jury trial, defendant nodded his head in agreement.

Although we perceive the better practice to include an express waiver of jury trial by the defendant in court we find no reversible error here. The close relation between defendant and trial counsel, the many pre-trial motions to disqualify Judge Warshawsky, and defendant's nodding agreement that he had waived jury trial all lead to our conclusion that his rights were adequately protected. For the same reasons, we believe his waiver was knowing and voluntary.

Defendant secondly argues that due to the lack of evidence of premeditation or deliberation at the preliminary examination, the magistrate erred in binding defendant over on an open charge of murder. We disagree.

Absent a showing of clear abuse of discretion, this Court will not reverse a magistrate's determination of probable cause. *People v Johnson,* 93 Mich App 667, 675; 287 NW2d 311 (1979), *People v Juniel,* 62 Mich App 529; 233 NW2d 635 (1975). The corpus delicti of first-degree murder must be demonstrated at the preliminary examination. *Johnson, supra.* The evidence at the preliminary

examination that defendant had previously known the victim and had danced with her shortly before she was murdered, and that hours later, at the scene of the crime, a witness testified to hearing screams and was told by defendant to leave because he (defendant) had "fucked up", was sufficient to establish probable cause of premeditation and deliberation. We will not discuss defendant's argument that the magistrate abused his discretion in binding defendant over on a charge of felony murder-rape, due to our treatment of defendant's felony murder conviction, *infra.*

Defendant also alleges that the trial court erred in admitting evidence of certain statements defendant made to the police which were allegedly involuntary. An extensive *Walker*[2] hearing was conducted, after which Judge Warshawsky ruled inadmissible several statements made by defendant before being apprised of his *Miranda*[3] rights and one taped statement of defendant determined to be incomplete. Judge Warshawsky ruled that several other statements that defendant made after being given his *Miranda* warnings were voluntary and admissible.

On appeal from a trial court's determination of voluntariness, this Court is required to examine the entire record and make an independent determination of voluntariness. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), *People v Germain,* 91 Mich App 154, 161; 284 NW2d 260 (1979), *People v Dixon,* 84 Mich App 675; 270 NW2d 488 (1978).

Relevant factors to be considered in this determination are "(a) the duration and conditions of

---

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

detention; (b) the manifest attitude of the police toward the accused; (c) the physical and mental state of the accused; and (d) diverse pressures which sap or sustain the accused's powers of resistance or self control". *People v Allen,* 8 Mich App 408, 412; 154 NW2d 570 (1967), citing *Culombe v Connecticut,* 367 US 568; 81 S Ct 1860; 6 L Ed 2d 1037 (1961). The ultimate consideration is whether "the confession [is] the product of an essentially free and unconstrained choice by its maker". *Id.*

In the case at bar, defendant, barefoot and clad only in a pair of blue jeans, was arrested and taken to the Bangor state police post between 5:30 and 6 a.m. on July 4, 1977. There he was handcuffed to a bar about shoulder height. After 25 minutes, one of defendant's hands was released and he was allowed to sit in a chair. Defendant stayed in this position for two to three hours and did manage to sleep, though he was aroused several times when his hand slipped off the bar and the handcuffs caught his wrist.

At approximately 11 a.m. that day, the handcuffs were taken off and defendant was questioned for one hour and 15 minutes by Detective Robert Rank. Both defendant and Detective Rank testified that at this time defendant was seated in Rank's office and was offered food and drink. Detective Rank described defendant as fatigued and confused, in the sense that he changed details of his story, but coherent. Defendant signed a waiver of his *Miranda* rights at that time. It does not appear that any coercive tactics were employed.

After this interview, defendant was seated in a padded chair with one hand cuffed to a wooden table. He was able to rest the restrained hand in his lap and the upper half of his body on the table. At approximately 4 p.m., Detective Rank removed

defendant's handcuff and defendant gave another statement after being advised of his *Miranda* rights. The questioning lasted 30 to 45 minutes.

After thoroughly examining the record, we agree with the trial judge that the conditions and duration of confinement did not render defendant's statements involuntary. Although we do not condone the practice of the state police of handcuffing prisoners to "the rack", defendant was able to sleep off and on, was offered and received food. Defendant claims on appeal that he was cold; however, he did not once mention this to the police and, as the trial court noted, it was July. Defendant also argues that even though informed of his right to be provided counsel if indigent, he thought he would have to take out a loan to pay back an appointed attorney. Defendant testified that in any event he did not believe then that he needed an attorney. Here, we are inclined to give deference to the trial judge's determination of defendant's credibility. *Dixon, supra,* 681. In summary, as we are not left with a definite and firm conviction that a mistake has been made, we decline to disturb the trial judge's findings. See *Dixon, supra.*

Defendant claims that certain evidence seized at his apartment violated his Fourth Amendment right to remain free from unreasonable searches and seizures. We disagree. Defendant admitted signing a consent form. Although defendant claims his consent was generated by the threat of an impending search warrant, there was evidence presented that no such threat occurred. To reiterate, where conflicting evidence is presented, the trial judge is in a better position to judge the credibility of witnesses. Under all the circumstances, we find defendant's consent to search was voluntarily given.

Further, the officers searching defendant's residence had duly executed search warrants. Defendant's contention that the warrants were based on the illegally obtained statements of defendant is without merit as we have determined those statements were voluntary and admissible. Moreover, according to the trend of recent Federal and Michigan decisions, it does not appear that application of the exclusionary rule is mandatory where a *Miranda* violation is concerned. *Michigan v Tucker,* 417 US 433, 438; 94 S Ct 2357; 41 L Ed 2d 182 (1974), *People v Kusowski,* 403 Mich 653; 272 NW2d 503 (1978).

Defendant next contends that the trial court erred in refusing to grant his motion for a directed verdict of acquittal on the charge of first-degree murder because of the lack of evidence at trial of premeditation or deliberation. When ruling on a motion for a directed verdict of acquittal, the trial judge must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

In *People v Morrin,* 31 Mich App 301, 329-330; 187 NW2d 434 (1971), Judge, now Justice, Levin formulated the following definitions of premeditation and deliberation:

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is

incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look' ". (Footnotes omitted.)

See also *People v Tilley,* 405 Mich 38; 273 NW2d 471 (1979), *People v Walker,* 93 Mich App 189, 196; 285 NW2d 812 (1979).

In *Walker, supra,* this Court relied on *People v Meadows,* 80 Mich App 680, 691; 263 NW2d 903 (1977), wherein we held the following factors relevant to a determination of whether the accused had an opportunity to subject his actions to a second look: " '(1) the previous relationship of the parties, (2) the defendant's actions prior to the actual killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide.' " 93 Mich App, 189-190.

We agree with the trial court that the evidence in the case at bar supports its finding of premeditation and deliberation necessary for a first-degree murder conviction. Richard Abbott testified that he, Michael Hills, and Anthony Marr came upon a trailer and a cream-colored Pontiac while on their way to drive their jeep through the sand dunes at approximately 2 a.m. on July 4, 1977. He said he heard a girl scream in a high-pitched voice three or four times and that the screams sounded muffled like they were coming from the car. Defendant, who was the only person to be seen, told Abbott and his friends to just leave because he had "fucked up" and would explain tomorrow what the problem was. Abbott's testimony was corroborated in detail by the testimony of Hills and Marr.

Merely because the three were unable to testify that the screams were made by Terri Wilson does not require reversal. There was sufficient circum-

stantial evidence to lead to the reasonable, permissible inference that she was in the trunk of her car screaming for help. The pathologist testified that it would have been highly unlikely that she would have been able to scream after receiving the blow on the back of the head which eventually caused her death. This supports the trial judge's conclusion that she was alive at the time the three men encountered defendant. We also agree that this gave defendant sufficient time to reconsider his actions but that he failed to do so. Regardless of whether defendant had formulated the intent to rape and murder Terri Wilson earlier in the evening, there was sufficient evidence on the elements of premeditation and deliberation.

Defendant next contends his conviction of first-degree felony murder was violative of the due process clause since the underlying felony, rape, had been abolished and replaced with the criminal sexual conduct act, MCL 750.520a, *et seq.;* MSA 28.788(1) *et seq.* This argument was recently rejected by the Michigan Supreme Court in *People v McDonald,* 409 Mich 110; 293 NW2d 588 (1980). In *McDonald,* the Court found that the Legislature intended that the repealed carnal knowledge statute continue to define "rape" for purposes of the felony murder statute and that the latter statute was unaffected by the passage of the criminal sexual conduct act.

However, under Michigan law, where only one murder occurred, defendant's conviction of both first-degree premeditated murder and first-degree felony murder violates double jeopardy protection. *People v Densmore,* 87 Mich App 434, 440-441; 274 NW2d 811 (1978), *People v Sparks,* 82 Mich App 44, 52-53; 266 NW2d 661 (1978). Therefore, defendant's felony murder conviction must be vacated.

Since there was ample evidence of premeditation and deliberation and as defendant received only one punishment, his first-degree murder conviction is affirmed.

Affirmed as modified.